IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHARLES S. HANCOCK,            )
                               )
         Appellant,            )
                               )
    v.                         )        1:09cv622
                               )
SHIRLENE LETH RENSHAW,         )
                               )
         Appellee.             )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge

    This matter is before the court on appeal from a Judgment of the Bankruptcy Court granting Shirlene Leth Renshaw ("Renshaw") damages and attorney's fees against Charlie S. Hancock ("Hancock") for conversion and unfair and deceptive trade practices. The court heard oral argument on the appeal on November 24, 2009. For the reasons that follow, the court affirms the Bankruptcy Court's conversion award but reverses and remands the unfair and deceptive trade practice claim for further proceedings.

I.    BACKGROUND

    The facts are set forth in the Bankruptcy Court's finding of facts in its Memorandum Opinion dated May 5, 2009 ("Mem. Op."). In substance, they show the following:

On December 29, 2004, Renshaw entered into a layaway agreement with High Point Sewing & Vacuum Center ("HPSVC"), which is owned by Hancock,[1] for the purchase of a Baby Lock Ellegante sewing/embroidery machine ("Ellegante") for the price of $6,000.00. Renshaw paid a total of $2,720 in layaway payments, but on November 26, 2005, she had a discussion with Peggy Winslow ("Winslow"), the manager of HPSVC, who agreed to alter their agreement to permit Renshaw to take possession of the Ellegante and make installment payments toward the purchase price. A receipt indicated that on that date Renshaw traded in another sewing machine whose value was applied toward the purchase price of the Ellegante. Through this restructuring of the arrangement, Renshaw was provided a new Ellegante in November 2005.

After taking possession of the new Ellegante, Renshaw continued to make payments until June 2006, leaving a balance of

---

[1] Hancock argues on appeal that the bankruptcy court erred in entering Judgment against him personally. His counsel concedes that this issue was never raised in the bankruptcy court, and thus it cannot be raised on appeal, at least absent "exceptional circumstances" not present here. See Prunty v. Terry (In re Paschall), 408 B.R. 79, 87 (E.D. Va. 2009) ("District courts will not review issues raised for the first time on appeal except under exceptional circumstances.") (citing In re Endicott, 157 B.R. 255, 258 (W.D. Va. 1993)). Moreover, it is plain under North Carolina law that an officer or employee can be held liable individually for his torts committed in the scope of his employment. Wilson v. McLeod Oil Co., Inc., 327 N.C. 491, 518, 398 S.E.2d 586, 600 (1990).

2

$1,020.09. On September 5, 2006, Renshaw filed a Chapter 13 bankruptcy petition.

Renshaw continued to possess the Ellegante until September 16, 2006, when she brought it to HPSVC for repairs. When she returned on September 23, 2006, to pick it up, Hancock told her that it needed further repairs. He also advised her that, due to her recent bankruptcy filing, he was unwilling to loan her another Ellegante and that she would need to pay the remaining balance in order to take the machine home. Hancock offered Renshaw the options of using the money she had already paid as full payment on a lower-end Baby Lock Esante sewing/embroidery machine ("Esante"), or returning the Esante and paying the remaining balance in exchange for an Ellegante before the end of 2006. Renshaw decided to take the Esante home to work on a large order but denied that she agreed to accept it in lieu of the Ellegante she had received earlier.

On October 4, 2006, Renshaw's attorney sent Hancock a letter advising that he was in violation of the automatic stay and requesting that the Ellegante be returned. The next day, Hancock responded that Renshaw possessed the Esante that she paid for in full and reiterated his offer to exchange it for an Ellegante if she paid the outstanding balance of $1,240. On February 7, 2007, Renshaw's counsel again wrote Hancock and

3

requested that the Ellegante be returned in exchange for the Esante and noted that Hancock's remedy was to file a claim in Renshaw's Chapter 13 case.

When Hancock failed to respond, Renshaw filed an adversary proceeding in her bankruptcy case alleging that Hancock had converted the Ellegante to his use and that such conversion constituted an unfair and deceptive trade practice (apparently under N.C. Gen. Stat. § 75-1.1 ("UDTPA"), although it was not cited in the Complaint). Also, Renshaw sought treble damages and attorney's fees.

On February 10, 2009, Renshaw's adversary proceeding was tried before the Bankruptcy Court. Hancock appeared *pro se*, and Renshaw was represented by counsel. In a Memorandum Opinion dated May 5, 2009, the Bankruptcy Court, in a thorough analysis, concluded that although the original agreement between Hancock and Renshaw was a layaway contract, the arrangement became an installment sales contract in November 2005 when Renshaw was permitted to take possession of the Ellegante. As a consequence, although Hancock may have intended to retain title in the Ellegante, the Bankruptcy Court found that title was transferred to Renshaw, leaving Hancock with a security interest that never attached insofar as Hancock failed to have Renshaw execute a security agreement. N.C. Gen. Stat. §§ 25-2-106(1)

4

(indicating that layaway contract requires that Seller holds identified goods for future delivery) and 25-2-401(1) (stating that "[a]ny retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest").

The Bankruptcy Court further found that Hancock "exercised unauthorized ownership of the Plaintiff's property to the exclusion of her rights as owner when he refused to return the Ellegante." (Mem. Op. at 11.) Consequently, the court awarded damages in the amount of $4,800, representing the value of the Ellegante at the time of the conversion. The Bankruptcy Court then determined that "[t]he existence of the tort of conversion establishes an unfair act or practice" and rejected Hancock's claims that any good faith belief he may have had to rightful ownership of the Ellegante served as a defense to either the conversion or UDTPA claim. (Mem. Op. at 13.) The Bankruptcy Court trebled the award to $14,400.00 and, upon finding that Hancock's conversion was willful and involved an unwarranted refusal to resolve the matter, concluded that an award of attorney's fees was appropriate. (Mem. Op. at 16.) Renshaw filed an application for attorneys' fees on May 18, 2009. Hancock filed a motion to "Stay Enforcement of Judgment" on May 26, 2009, even though no Judgment had been entered, and the

Bankruptcy Court held a hearing on the fee request on June 16, 2009. Judgment was entered on June 17, 2009, which included a fee award in the amount of $4,114.00.

On appeal, Hancock challenges the Judgment as to both the conversion and UDTPA claims.

**II. ANALYSIS**

This court exercises jurisdiction pursuant to 28 U.S.C. § 158(a)(1) and Fed. R. Bankr. P. 8001(a).[2] The Bankruptcy Court's findings of fact are reviewed for clear error and its conclusions of law *de novo*. Fed. R. Bankr. P. 8013; Devan v. Phoenix Am. Life Ins. Co. (*In re* Merry-Go-Round Enters., Inc.),

---

[2] Hancock filed his Notice of Appeal on May 15, 2009, after the Bankruptcy Court issued its Memorandum Opinion (which contained no Order) on May 5, 2009, but before it entered Judgment awarding damages, attorneys' fees and costs on June 17, 2009. Neither party has addressed whether this premature filing of Notice of Appeal creates a jurisdictional problem for the court. However, Bankruptcy Rule 8002(a) provides: "A notice of appeal filed after the announcement of a decision or order but before entry of the judgment, order, or decree shall be treated as filed after such entry and on the day thereof." Fed. R. Bankr. P. 8002(a). The Rule was added to conform to Federal Rule of Appellate Procedure 4(a)(2), "which is designed to avoid the loss of the right to appeal when a notice of appeal is filed prematurely." Fed. R. Bankr. P. 8002 advisory committee's notes (1991 amendment). Thus, Hancock has invoked this court's appellate jurisdiction as to the issues he raises in this appeal; whether Hancock has properly preserved any challenge to the reasonableness of any attorney's fee award, which was not addressed in the May 5, 2009, Memorandum Opinion but was decided after the Notice of Appeal, need not be decided because Hancock does not challenge their reasonableness on appeal. See Merchants Bank v. C.R. Davidson Co., Inc. (In re C.R. Davidson Co., Inc.), 232 B.R. 549, 551-52 (2d Cir. BAP 1999) (holding appeal timely when Notice of Appeal was filed after entry of memorandum opinion containing no order, decree or judgment, and before bankruptcy court's entry of judgment).

400 F.3d 219, 224 (4th Cir. 2005). The court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.

**A. Conversion Claim**

Conversion requires proof of "(1) the unauthorized assumption and exercise of the right of ownership; (2) over the goods or personal property; (3) of another; (4) to the exclusion of the rights of the true owner." Estate of Graham v. Morrison, 168 N.C. App. 63, 72, 607 S.E.2d 295, 302 (2005) (quoting Di Frega v. Pugliese, 164 N.C. App. 499, 509, 596 S.E.2d 456, 463 (2004)). The essence of the tort is a wrongful deprivation of the property from the owner. Lake Mary Ltd. P'ship v. Johnston, 145 N.C. App. 525, 532, 551 S.E.2d 546, 552 (2001).

Hancock contends that the Bankruptcy Court erred in finding him liable for conversion. In so doing, he brings to mind Clare Boothe Luce's famous aphorism that "no good deed goes unpunished" by rearguing his good faith belief that he was simply doing Renshaw a favor by permitting her to use the Ellegante machine even though she still owed layaway payments on it. Further, he urges that, even if the layaway plan became an installment sales contract, he nevertheless obtained a possessory lien on the Ellegante for repairs pursuant to N.C.

7

Gen. Stat. § 44A-1 et. seq., which, he contends, authorized his retention of the machine until Renshaw paid for repairs (which she never did).

Problematic to Hancock's argument is the fact that he has provided no transcript from his trial. However, his arguments as to the facts are plainly contrary to those found by Chief Judge William Stocks, who rejected them. Moreover, there is no evidence that he raised his statutory argument in the Bankruptcy Court, which precludes him from raising it for the first time on appeal absent "exceptional circumstances." Paschall, 408 B.R. at 87. The court finds no "exceptional circumstances" warranting consideration of whether a possessory lien exists or could exist under the circumstances of this case. Considering the materials of record, the court cannot say that as to the conversion claim the Bankruptcy Court's findings of fact are clearly erroneous, and the court finds its conclusions of law are correct. Thus, the Bankruptcy Court's conclusion as to the conversion claim is affirmed.

**B. Unfair and Deceptive Trade Practice Claim**

Hancock contends that the Bankruptcy Court erred in determining that the conversion of the Ellegante constitutes an unfair and deceptive trade practice. Specifically, he argues that the Bankruptcy Court failed to find as fact that sufficient

8

egregious or aggravating circumstances existed to support a determination that the conduct was unfair or deceptive. Renshaw, on the other hand, contends that the record adequately supports the Bankruptcy Court's determination that the conversion was unfair or deceptive within the meaning of the UDTPA.

In order to establish a *prima facie* case under the UDTPA, a plaintiff must show that (1) the defendant committed an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) proximately causing injury to the plaintiff. Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). The parties do not dispute that the second and third elements are met, thus the issue before the court is whether Hancock's conduct constituted an unfair or deceptive act or practice.

Renshaw cites to Love v. Pressley, 34 N.C. App. 503, 516-17, 239 S.E.2d 574, 583 (1977), holding that a landlord's conversion of a tenant's property before expiration of the lease through a refusal to return it upon demand constituted an unfair and deceptive trade practice, and Eley v. Mid/East Acceptance Corp. of N.C., Inc., 171 N.C. App. 368, 375, 614 S.E.2d 555, 561 (2005), holding that a defendant's conversion of produce (by allowing it to rot) when repossessing the truck carrying it constituted an unfair and deceptive trade practice. She claims

9

that these cases demonstrate that conversion can constitute an unfair or deceptive practice.

At oral argument, however, counsel for Renshaw conceded, as he must, that conversion in and of itself does not necessarily constitute an unfair or deceptive act or practice. Rather, there must be sufficient aggravating or egregious circumstances. See, e.g., Bartlett Milling Co., L.P. v. Walnut Grove Auction & Realty Co., Inc., 192 N.C. App. 74, 83, 665 S.E.2d 478, 487 (2008) (holding that conversion does not constitute an unfair or deceptive trade practice as a matter of law), rev. denied, 362 N.C. 679, 669 S.E.2d 741 (2008); Allied Distribs., Inc. v. Latrobe Brewing Co., 847 F. Supp. 376, 380 (E.D.N.C. 1993) (noting that "[t]he North Carolina legislature must have intended that substantial aggravating circumstances be present before any practice is deemed unfair under [this section], since it provided that any damages suffered by the victim are to be trebled") (citations omitted); Branch Banking & Trust Co. v. Columbian Peanut Co., 649 F. Supp. 1116, 1120-21 (E.D.N.C. 1986) (holding that "[w]hile such conversion was wrongful, the same was not accompanied by fraud and deceit, or other course of dealing which would indicate overreaching on the part of [defendant]" and that "[i]n the final analysis, [defendant's]

10

conduct simply is not so egregious as to arise to the level of conduct which is prohibited by the subject statute").[3]

Whether an act is unfair or deceptive within the meaning of the UDTPA is a question of law and depends on the facts of the particular case. Walker v. Fleetwood Homes of North Carolina, Inc., 362 N.C. 63, 71, 653 S.E.2d 393, 399 (2007). In the present case, it is difficult to tell whether the Bankruptcy Court concluded that sufficient egregious or aggravating circumstances were present to render the conversion an unfair act or practice. Indeed, the Bankruptcy Court concluded simply that "[t]he *existence* of the tort of conversion *establishes* an unfair act or practice." (Mem. Op. at 13 (emphasis added).) Though the Bankruptcy Court found that Hancock acted willfully (a requirement for an award of fees), there is no discussion of any egregious or aggravating factor found by the court to justify its determination that *this* conversion was unfair or deceptive. It appears rather that the court concluded that the

---

[3] North Carolina courts have defined the conduct necessary to support a claim under the UDTPA as follows: "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers . . . . [A] practice is deceptive if it has the capacity or tendency to deceive; proof of actual deception is not required." Marshall v. Miller, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981) (citations omitted). "Moreover, where a party engages in conduct manifesting an inequitable assertion of power or position, such conduct constitutes an unfair act or practice." Gray v. North Carolina Ins. Underwriting Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 682 (2000) (citing Johnson v. Beverly-Hanks & Assocs., 328 N.C. 202, 208, 400 S.E.2d 38, 42 (1991)).

tort of conversion constituted a *per se* unfair or deceptive act or practice. Clearly, North Carolina law requires more.

Renshaw argues on appeal that Hancock's refusal to return the Ellegante machine constituted a violation of the automatic stay and therefore evidences a violation of public policy sufficient to declare the conduct unfair or deceptive. The difficulty with this argument is that the Bankruptcy Court expressly declined to address whether Hancock violated the automatic stay because Renshaw's Complaint in the adversary proceeding did not contain such a claim. (Mem. Op. at 16 n.11.)

Because the Bankruptcy Court appears to have operated under the misimpression that the conversion it found *ipso facto* constituted an unfair or deceptive act or practice, the case should be remanded for further determination whether egregious or aggravating circumstances exist so as to constitute a violation of the UDTPA and warrant the trebling of damages. This is especially true on this record, where testimony relevant to this issue was likely presented at trial yet no transcript has been made a part of the record on appeal.[4] See Walker, 362

---

[4] Hancock argues that his good faith misunderstanding of the law should be a defense to a UDTPA claim. Specifically, he points to his claimed belief that he was entitled to maintain possession of the Ellegante machine after it was returned for repairs under the mistaken view that his arrangement with Renshaw continued to constitute a layaway. Hancock's position appears to be unsupported in the law. While it is true that one may assert a good faith *claim* predicated on an erroneous interpretation of the law without it being an unfair act

12
Case 1:09-cv-00622-TDS   Document 12   Filed 12/11/09   Page 12 of 13

N.C. at 72, 653 S.E.2d at 399-400 (remanding for further determination whether sufficient facts existed to support claim that defendant's violation of statute constituted an unfair or deceptive act or practice).

**III. CONCLUSION**

For the reasons set forth above, IT IS THEREFORE ORDERED that the Judgment of the Bankruptcy Court entered June 17, 2009, is AFFIRMED in part and REVERSED in part, as follows:

1. The award for conversion in the amount of $4,800.00 is AFFIRMED;

2. The award for an unfair and deceptive trade practice under N.C. Gen. Stat. § 75-1.1 is REVERSED;

3. This action is REMANDED to the Bankruptcy Court for further proceedings consistent with this opinion.

                                         /s/ Thomas D. Schroeder
                                         United States District Judge

December 11, 2009

---

or practice, Allied Distribs., 847 F. Supp. at 380, North Carolina courts have made clear that good faith otherwise is not a defense under the UDTPA. Marshall, 302 N.C. at 548 & 549, 276 S.E.2d at 403 (holding that "good faith is not a defense to an alleged violation of G.S. 75-1.1," and that "the intent or good faith belief of the actor is irrelevant"); Media Network, Inc. v. Long Haymes Carr, Inc., 678 S.E.2d 671, 683-84 (N.C. App. 2009) (because the focus is on the effect the actor's conduct has on the consuming public, "the defendant's intent [is] irrelevant when evaluating a UDTP[A] claim").

13